IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No. 22-1447 (CJB) |
| AMAZON.COM, INC. and AMAZON.COM SERVICES LLC, | ) ) **REDACTED - PUBLIC VERSION** ) ) |
| Defendants. | ) ) |

**AMAZON DEFENDANTS' RESPONSIVE LETTER TO JUDGE BURKE
REGARDING STATE FARM'S DISCOVERY DISPUTE**

OF COUNSEL:

Douglas E. Lumish
LATHAM & WATKINS LLP
140 Scott Drive
Silicon Valley, CA 94025
(650) 328-4600

Adam M. Greenfield
David A. Zucker
Jessica Lam
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
(202) 637-2200

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*

**Original Filing Date: October 24, 2023**
**Redacted Filing Date: October 25, 2023**

Dear Judge Burke:

Amazon respectfully submits this letter in accordance with the Court's order (D.I. 67), and in opposition to State Farm's letter (D.I. 70) which seeks an order compelling Amazon to produce "at least 50,000 documents per week effective immediately."

State Farm's demanded relief is unwarranted, and its letter mischaracterizes both Amazon's positions and its document productions. Amazon has, at all times, remained committed to making rolling document productions and to substantially completing document production by December 5, 2023, as described in the Scheduling Order (D.I. 34). Consistent with that approach, Amazon has produced more than 110,000 pages of documents to date, including most recently 955 ESI documents on October 13, 2023, and 35,535 ESI documents on October 20, 2023. Amazon will continue to produce documents on this rolling basis, such that its production is substantially complete by the date set in the scheduling order. No deviation from that schedule is warranted.

**First**, State Farm's repeated claim that "Amazon contends that it need not produce its ESI at all until the substantial completion deadline," D.I. 70 at 1, is incorrect. State Farm's own exhibit shows that Amazon committed, in writing, "to produce documents on a rolling basis under the discovery protocol" to meet "the existing substantial completion deadline." D.I. 70-1 at 1. Amazon has done, and will continue to do, exactly that—as evidenced by its recent productions.

**Second**, State Farm's demand that Amazon collect, review, and produce "50,000 documents per week" for months is arbitrary, and disproportionate to the needs of this case regardless of the sufficiency of Amazon's production. Proportionality is determined by, among other factors, "the amount in controversy." Fed. R. Civ. P. 26(b)(1). Amazon has explained to State Farm that (1) <u>fewer than ███ customers use the accused fall detection feature</u>, and (2) <u>total lifetime gross revenues of all accused products are approximately ███████ dollars</u>. Although State Farm has yet to articulate a damages theory or make an initial settlement demand, this is not a case whose value warrants State Farm's extraordinary discovery request. *See MLC Intellectual Prop., LLC v. Micro Tech., Inc.*, 10 F.4th 1358, 1372 (Fed. Cir. 2021) (early discussion of damages "helps parties determine the resources that will be devoted to a case based on its potential value").

**Third**, and relatedly, the documents that State Farm demands are not critical to resolving any issues in this case. State Farm has been in possession of Amazon's core technical document production, which explains how the accused products were designed and work, for more than six months. At no point has it claimed that production was insufficient.[1]

In contrast with the technical documents Amazon produced months ago, the "custodial ESI" that State Farm now demands consists almost entirely of the day-to-day emails of Amazon employees hand-selected by State Farm. Because State Farm's proposed search terms broadly include every permutation of the name of the accused products (*see, e.g.* D.I. 70-1 at 2), the

---

[1] State Farm complains that some of these documents have no "author [or] individual custodian … metadata," but that is a function of how these documents were created and/or kept in the ordinary course of business. They were not authored by individuals, but created on a web-based cooperative wiki system where they were collectively edited. Amazon cannot, and need not, create metadata that does not exist.

1

corresponding search results include the majority of the emails these employees have sent in their time at Amazon.

To be clear, Amazon has been producing, and will continue to produce, all relevant, responsive, and non-privileged emails from the agreed-upon custodians that hit on the agreed-upon search terms. But State Farm's claim that it is "in the dark as to who at Amazon was responsible for developing the accused products" without those emails is meritless. For example, the core technical documents include a list of twenty six "Key Stakeholders" in the development of the accused products, with each employee specifically identified by their "Role." Ex. 1 at AMZ_0000557-558. State Farm also has Amazon's Rule 26 initial disclosures, and its interrogatory responses, which identify knowledgeable persons. Even if that were not the case, the requested emails have no bearing on, and are certainly not "critical" to, State Farm's ability to "serve final infringement contentions" as it claims. D.I. 70 at 1.

**Fourth**, State Farm's letter lacks context for its own productions. Though it is true that State Farm has produced "more than 45,000 documents," more than 99.75% of those documents were produced only after State Farm initiated the instant discovery dispute. At the time State Farm elected to involve the Court, State Farm had produced a grand total of 107 documents, significantly fewer than Amazon's own production to that point. While discovery is not a tit-for-tat game, and Amazon would not withhold its own productions in view of State Farm's deficiencies, the timing of State Farm's own production speaks for itself.

**Lastly**, State Farm appears to significantly overestimate how many documents are at issue. Amazon provided the number of ESI documents that hit on each of State Farm's fourteen proposed search strings, D.I. 70-1 at 5, but there is significant overlap between each of those fourteen categories. After de-duplication and email threading, the total number of documents responsive to State Farm's search requests is far less than the quoted 178,000 number. State Farm's proposed relief of 50,000 documents produced per week would therefore improperly require Amazon to complete its production substantially *ahead* of the scheduled deadline, which is uncalled for.

For all of the above reasons, State Farm's request to deviate from the existing Court-ordered document production schedule should be denied. Amazon is committed to making rolling productions to substantially complete its document production by December 5, 2023, and has completed significant portions of that production already. State Farm's claim that it needs the day-to-day emails of Amazon employees sooner than that is unsupported, and contrary to the existing scheduling order.

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT:lo
Attachment
cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via electronic mail)