IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-1447-CJB |
| AMAZON.COM, INC. and AMAZON.COM SERVICES LLC, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington, Delaware this **11th day of September, 2024**.

**WHEREAS**, the Court has reviewed Plaintiff State Farm Mutual Automobile Insurance Company's ("Plaintiff") "Motion to Strike Portions of Amazon's Opening Invalidity Report Containing Obviousness Combinations Not Elected by Amazon Pursuant to the Scheduling Order[,]" ("Motion"), (D.I. 209), and the briefing related thereto, (D.I. 210; D.I. 212; D.I. 213), and heard argument on the Motion on September 9, 2024;

**NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

1.  Paragraph 6(h)(iv) of the Scheduling Order provides that "[b]y February 28, 2024, Defendants shall assert no more than six prior art references against each patent and not more than a total of 30 references. . . . For purposes of this Final Election of Asserted Prior Art ["Final Election"], each obviousness combination counts as a separate prior art reference" ("paragraph 6(h)(iv)"). (D.I. 34 at 4) On February 28, 2024 ("February 28"), Defendants sent Plaintiff an e-mail identifying their Final Election; Defendants listed six prior art obviousness combinations for each asserted patent pursuant to paragraph 6(h)(iv); on the same date, Defendants also served their Final Invalidity Contentions, which identified the same six selected

obviousness combinations for each asserted patent (the "six combinations"). (D.I. 210, ex. 2 at 6-7; *id.*, ex. 3 at 16-22)[1] On June 27, 2024, Defendants served the expert report of Dr. Benjamin B. Bederson regarding invalidity (the "Bederson Report"). (*Id.*, ex. 1) In the Bederson Report, Dr. Bederson asserts that the ECSP patents are invalid in light of numerous different *subsets* of the identified six combinations. More specifically (and for example), instead of asserting that the '235 patent is invalid in light of the six combinations, Dr. Bederson asserts that the '235 patent is invalid in light of 11 different obviousness combinations (the "additional combinations")—combinations that do not identically match any of the previously-identified six combinations. (*Id.*, ex. 1 at 69-225 & Appendix B at 1-2)[2] With the Motion, Plaintiff requests that the Court strike the portions of the Bederson Report referencing the additional combinations (i.e., any combinations beyond the six combinations per patent that had been selected by Defendants on February 28), and permit Defendants to serve an amended report that removes the additional combinations. (D.I. 210 at 1)[3]

2. As a threshold matter, the parties dispute the standard that applies to the instant

---

[1] There are six asserted patents: United States Patent Nos. 11,056,235 (the "'235 patent"), 11,107,581 (the "'581 patent"), 11,114,203 (the "'203 patent"), 11,393,585 (the "'585 patent"), 10,825,318 (the "'318 patent") and 11,094,180 (the "'180 patent"). The '235, '581, '203 and '585 patents will be referred to as the "ECSP patents" and the '318 and '180 patents will be referred to as the "SPHERES patents."

[2] While Dr. Bederson used the phrase "and/or" with respect to certain of the additional combinations (which could allow for them to have even *greater* breadth), during oral argument, Plaintiff's counsel acknowledged that Dr. Bederson confirmed during his deposition that "and/or" really just means "and."

[3] The Motion also asserted that for the SPHERES patents, Dr. Bederson had discussed numerous combinations that were different than the six combinations per patent that Defendants had selected on February 28—due to Dr. Bederson's use of the phrase "and/or" in his proffered combinations. (D.I. 210 at 2) However, in light of Dr. Bederson's subsequent deposition testimony, in which he confirmed that "and/or" means "and," the instant dispute is now solely focused on the ECSP patents.

Motion.  Plaintiff asserts that with the Bederson Report, Defendants violated paragraph 6(h)(iv) of the Scheduling Order and thus, pursuant to Federal Rule of Civil Procedure 16, Defendants must show good cause for asserting the additional combinations in the Bederson Report.  (*Id.* at 2)  Meanwhile, Defendants argue that Federal Rule of Civil Procedure 37 and the *Pennypack* factors should apply to the parties' dispute.  (D.I. 212 at 4-5)  The Court sides with Plaintiff here.  If after serving the Final Election, Defendants had thereafter served an amended Final Election asserting all of the same additional combinations that are now found in the Bederson Report, then such an amendment would have clearly violated paragraph 6(h)(iv).  And here, the Bederson Report accomplishes the exact same thing, just in a slightly different format.  In other words, with the Bederson Report, Defendants are in fact asserting "more than six prior references against each patent" (references that are different than those selected in their "Final Election")—just what paragraph 6(h)(iv) prohibits.  (D.I. 34 at 4)  Because service of the Bederson Report amounts to a violation of the Court's Scheduling Order, Defendants must therefore show good cause to support the inclusion of these additional combinations.  Fed. R. Civ. P. 16(b)(4); *see also Chervon (HK) Ltd. v. One World Techs., Inc.*, Civil Action No. 19-1293-GBW, 2023 WL 2372938, at *3 & n.3 (D. Del. Mar. 6, 2023) (applying the good cause standard to a dispute regarding defendants' untimely amended final invalidity contentions).[4]  In determining whether a party has demonstrated good cause, courts first consider the diligence of the party seeking to modify the scheduling order.  *See, e.g.*, *Brit. Telecommc'ns PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020); *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, Civil Action No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D.

---

[4]   A court may exclude expert opinion and testimony pursuant to Fed. R. Civ. P. 16(f), which permits a court to impose such sanctions if, *inter alia*, a party "fails to obey a scheduling [order] or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).

3

Del. Dec 15, 2016). If that party has not been diligent, the inquiry ends (as good cause has not been demonstrated). *See, e.g.*, *Allergan, Inc. v. Revance Therapeutics, Inc.*, Civil Action No. 21-1411-RGA, 2024 WL 2254771, at *3-4 (D. Del. May 17, 2024).[5]

3.  On the record before the Court, Defendants have not shown good cause for asserting the additional combinations in the Bederson Report. In order for Defendants to demonstrate diligence, Defendants would need to show that they could not have known that they needed to earlier assert the additional references. But the record before the Court simply does not indicate this (as Defendants do not really seem to try to make that argument).[6] Although Defendants attempt to argue that the additional combinations do not present any new theories since they constitute a subset of previously disclosed combinations, (D.I. 212 at 2-3), the Court cannot agree.[7] Defendants' violation of the Scheduling Order in asserting the additional

---

[5] If that party has demonstrated diligence, courts may then consider other factors pertinent to the good cause inquiry, such as the potential prejudice to the opposing party that would result from permitting the belated identification. *Brit. Telecommc'ns PLC*, 2020 WL 3047989, at *2.

[6] That said, it might be possible for Defendants to explain why, on a combination-by-combination basis, a *particular* change from certain of the previously-disclosed combinations does not indicate a lack of diligence. For example, perhaps it is the case that, after conferring with Dr. Bederson and further evaluating Plaintiff's validity case, Defendants determined that a particular piece of prior art included in one of the six combinations did not actually add anything pertinent to the invalidity inquiry. (And perhaps Plaintiff would even agree that the later omission of that particular piece of prior art from the combination at issue was justified.). The parties may further meet and confer in line with this guidance about whether, as to any *particular* additional combination, Defendants have a good faith argument that the alteration at issue was actually the product of diligent efforts to streamline the case (as opposed to a last-minute change that should have been identified earlier and that unduly prejudices Plaintiff).

[7] One exception here relates to the '585 patent. There, Defendants explain (and Plaintiff does not dispute) that while the Alexa Silver reference was expressly recited in each of the six combinations in Defendants' Final Election, Defendants were only relying on Alexa Silver as evidence showing why there would have been a motivation to combine the other references listed in Defendants' claim charts and in the Bederson Report. (D.I. 212 at 2) In other words, there Defendants were not relying on Alexa Silver to show the prior disclosure of a

4

combinations is problematic. For instance, as Plaintiff points out, Defendants' current reliance on subsets of the six combinations could have a very real impact on Plaintiff's responsive theories as to issues such as motivation to combine. (D.I. 210 at 3) When an accused infringer removes a particular reference from an obviousness combination, that could impact how a patentee prepares its responsive validity position—since the patentee may well have been previously targeting the now-removed reference as a weak link in its opposition's invalidity case, and thereafter would have to completely recalibrate its position on this score. Moreover, Defendants' view—i.e., that it is always permissible for an expert to rely on multiple different *subsets* of a defendant's prior final election of combinations—would create havoc and render meaningless the concept of a "final" election. It might also "incentivize[ parties] to list every known prior art reference in a[ final] elected combination and [then] wait until expert discovery to disclose which [subset of those] reference(s) they actually intend to rely on." (D.I. 213 at 2)

    4. For these reasons, the Motion is GRANTED. *See, e.g.*, *Brit. Telecommc'ns PLC*, 2020 WL 3047989, at *2 (denying a defendant's request to supplement its invalidity contentions by adding a reference to its contentions, where the reference was not a new one, in that counsel had previously identified and charted the reference in final invalidity contentions, omitted it when serving revised contentions thereafter and now (after making a different "strategic assessment" of the reference's import) were trying to re-introduce the reference via the contested supplementation); *Vehicle IP, LLC v. Werner Enters., Inc.*, Civ. No. 10-503-SLR, 2013 WL 4786119, at *2-3 (D. Del. Sept. 9, 2013) (striking a prior art theory in defendant's expert report

---

relevant claim element as part of an invalidity argument. If that is indeed the case, then the combinations at issue in the Bederson Report regarding the '585 patent that match up with the six combinations in the Final Election (minus Alexa Silver) would not be in violation of the Scheduling Order and would not be untimely-disclosed combinations.

that was not elected in the defendant's final invalidity contentions, in light of a prior court order that had required the defendant to "limit the number of prior art references or combinations per asserted claim"). The relevant sections of the Bederson Report regarding the ECSP patents are stricken (subject to any further meet and confer as discussed above, *see supra* n.6). Defendants may serve an amended version of the Bederson Report that removes all additional combinations that were not elected by Defendants pursuant to paragraph 6(h)(iv); they must do so within 14 days of this Memorandum Order, absent further Court order to the contrary.

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE